126 F.3d 418
 72 Empl. Prac. Dec. P 45,060, 13 IER Cases 598
 Martin J. HANKARD, Steven J. Kulikowski, Gregory J.
Soderburg, Plaintiffs-Appellants,
v.
TOWN OF AVON, Philip K. Schenck, Joseph Lander, Town
Attorney, Individually and Officially, James A.
Martino, Jr., Chief of Police,
Individually and Officially,
Defendants-Appellees.
 No. 1504, Docket 96-9439.
 United States Court of Appeals,
Second Circuit.
 Argued May 16, 1997.
Decided Oct. 2, 1997.
 
 Elizabeth A. Gallagher, Gallagher, Gallagher & Calistro, New Haven, CT (James S. Brewer, West Hartford, CT, Owen P. Eagan, Eagan & Donahue, West Hartford, CT, on the brief), for Plaintiffs-Appellants.
 Scott M. Karsten, Sack, Spector & Barrett, West Hartford, CT, for Defendants-Appellees.
 Ronald D. Williams, Jr., Williams, Cooney & Sheehy, Bridgeport, CT, for Defendant-Appellee Joseph Lander.
 Before: WINTER, Chief Judge and ALTIMARI, Circuit Judges, and KEENAN, District Judge*.
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Martin J. Hankard, Steven J. Kulikowski and Gregory J. Soderburg (collectively "plaintiffs") appeal from a judgment entered in the United States District Court for the District of Connecticut (Covello, J.), dismissing their complaint against defendants-appellees Town of Avon ("Town"), and both individually and in their official capacity, Philip K. Schenck, Town Manager, Joseph Lander, Town Attorney and James A. Martino, Jr., Chief of Police, (collectively "defendants"), seeking damages principally under 42 U.S.C. § 1983 for violation of plaintiffs' rights of freedom of speech and procedural due process as guaranteed by the First and Fourteenth Amendments to the Constitution, and seeking damages under state law. The district court granted summary judgment dismissing the complaint, ruling that plaintiffs failed to make an adequate showing that their constitutional rights had been infringed when defendants directed plaintiffs to resubmit an internal, investigative report for clarification. The district court also declined to exercise pendent jurisdiction over plaintiffs' state law claims.
 
 
 2
 On appeal, plaintiffs contend principally that the district court improperly granted summary judgment against them because it failed to resolve all ambiguities and draw all reasonable inferences in their favor as the nonmoving parties. We disagree, and accordingly affirm the district court's judgment dismissing plaintiffs' complaint.
 
 BACKGROUND
 
 3
 On August 28, 1981, the Avon police department promulgated General Order 3-16, amended on August 7, 1990, which allows police department supervisors to participate in peer review of Avon police officers. Viewed in the light most favorable to plaintiffs, the events leading to the present lawsuit are as follows.
 
 
 4
 At all pertinent times, plaintiffs were sergeants in the Avon police department. On April 12, 1994, pursuant to General Order 3-16, Police Chief Martino ordered plaintiffs to convene an Administrative Review Board (the "Board") to investigate and report on the allegations of racial discrimination in the department by a former Avon police officer, Alvin Schwapp. Schwapp's claims were chiefly directed against two fellow officers, Thomas A. Transue and Stephen A. Howe, and defendants' tacit endorsement.
 
 
 5
 The Board submitted a report of its findings to Martino on September 13, 1994 (the "report"). The Board found both Transue and Howe in violation of applicable sections of the Police Manual. Thereafter, the Board, Martino and Town Attorney Joseph Lander met and discussed the findings in the report. In a memorandum dated October 7, 1994, Martino determined that the report the Board submitted was incomplete and unclear.
 
 
 6
 Specifically, Martino stated that questions posed to Howe and Transue were unanswered. In addition, Martino noted that because the Board was relying on allegations that Schwapp never lodged, Howe and Transue should have been given an opportunity to respond to those allegations. The report also contained discrepancies among the various officers' statements regarding Howe's remark during a training class, and Martino observed that because certain of Transue's remarks could be construed in a non-discriminatory manner, the preliminary adverse finding with respect to these statements should be reconsidered.
 
 
 7
 The memorandum did not indicate what Martino's final determination would be, but stated that it was important to present the Board with Martino's concerns so that he could "fully appreciate and comprehend the rationale of the Board's findings and reach an appropriate final decision." In conclusion, the memorandum stated:
 
 
 8
 [t]he Board is directed to consider the discrepancies I have describe[d] and then more specifically identify the basis for any finding that Sergeant Transue improperly/illegally ordered any officer to make motor vehicle stops in a racially discriminatory manner.
 
 
 9
 Martino returned the report to the Board for further action pursuant to General Order 3-16, section IV, which provides that "[i]f the Chief determines that the report is not complete or inconclusive or unclear, he may resubmit the report to the Board with direction as to how and in what manner the same is to be more properly and fully completed."
 
 
 10
 On October 18, 1994, in order to complete the report, the Board submitted a list of seventeen questions to Martino to be answered by certain members of the Avon police department including Howe and Transue. By written memorandum dated October 20, 1994, Martino informed the Board that four of the seventeen questions were irrelevant to the allegations of Schwapp, but that the remaining questions would be posed to the identified officers.
 
 
 11
 In a memorandum dated November 9, 1994, the Board advised Martino that it would take no further action on the report, stating in pertinent part:
 
 
 12
 [i]t is obvious from your October 7, 1994 memo that you do not agree with the Boards [sic] original findings and recommendations. However, we believe it is improper for you to attempt to impose your findings upon the Board.
 
 
 13
 It is obvious to the Board that we are no longer in control of the investigation. Rather, you have assumed the investigation under the pretext of the Board's authority. We cannot in good conscience be manipulated in this way. [ ]
 
 
 14
 Therefore, for all the foregoing reasons the Board declines to issue a supplemental report as directed in your October 7, 1994 memorandum. The Board stands by it's [sic] findings and recommendations as set forth in our report to you dated September 13, 1994 and submitted on September 14, 1994.
 
 
 15
 Confronted with this state of affairs, Chief Martino and Attorney Lander scheduled a meeting with the Board on November 11, 1994 to further discuss the matter. Unbeknownst to Martino and Lander, the Board tape-recorded the conference, which revealed the following. At the outset of the meeting, Lander informed the Board that Martino's memorandum dated October 20, 1994, drafted by an attorney other than Lander, was in error and should be disregarded. Lander further made clear that (1) the Board would not be restricted in the scope of its further investigation; (2) Martino's October 7 memorandum requiring resubmission of the report remained in effect; and (3) in a revised report, the Board should address the additional information proffered by Martino. Lander indicated that the Board was free to submit the same findings and recommendations as long as it considered the additional issues:
 
 
 16
 [n]ow, if your report, whatever that may be, I mean, but now, it will include this additional information, and since there was an instruction in the memo to consider that other information, clearly it's going to be appropriate for you to incorporate somehow that information one way or the other. If nothing has changed, that's fine. We'll accept your findings or recommendations, but somehow to at least incorporate this new information on such-and-such a date, these questions were posed and you have considered them.
 
 
 17
 ....
 
 
 18
 In terms of the report, if you want to submit something that basically reached the same exact recommendations and findings, that's fine, but there is something in there. There are directions in there that say you must consider the following evidence including Howe's response, Transue's response, as well as any additional information as a result of posing the questions to Chevalier, so it is expected that you will comply with that and somehow deal with that, and that doesn't necessarily mean that you change your findings or recommendations or conclusions, but it means that you've got to agree to do something.
 
 
 19
 ....
 
 
 20
 A voice: What happens if you're not happy with what our response is to that?
 
 
 21
 [Lander]: At that point, if you address the memo to any further information that has been achieved, whether we've considered it and at this point we still reach these findings, you don't even have to say, "We still"; you just incorporate the information that you received as a result of these questions one way or the other, and then if your bottom line ends up being the same, you've complied with the orders, but you've got to show that you've at least considered this new information.
 
 
 22
 Finally, Lander stated that in his opinion the Board's failure to consider the additional evidence could constitute insubordination and could subject the Board members to disciplinary action:
 
 
 23
 [I]f you refuse to consider what you have been ordered to consider, that's obviously insubordination, and I don't even know that you've thought it out in this fashion, in a more formal fashion of that sort, but when you start talking about what we can and cannot do in good conscience, there's no room for that, and your labor counsel, your Union attorney would advise you the same way, that you've been given orders, comply with them, period.
 
 
 24
 I'm going to--it's based on that kind of analysis. I was trying to avoid having to get into that kind of a formality and that kind of a formal way of approaching it, but those are the facts. There have been orders given here; you are to consider those; and, yes, if we do keep this October 20th memo as part of--and all this that has been going back and forth is the guidance on conducting an investigation, and we're very comfortable with the resubmission and the basis for it, and any refusal on your part to comply with it and to take that guidance, to take that advice and go with it and do something with it, I think is going to be a mistake on your part and will reflect poorly in terms of the investigation by not considering those things.
 
 
 25
 You can take that for what it's worth. You can differ with that; you can have someone else who advises you differ on that; but, I just want you to give you the heads up that that's my opinion on that.
 
 
 26
 We're prepared to do that, reissue, you know, issue a response to this and wait for you to submit your final report in compliance with the Chief's orders and let the chips fall where they may.
 
 
 27
 On November 17, 1994, Martino issued a memorandum to plaintiffs that he expected a revised report by the following day. On November 21, 1994, the members of the Board commenced the present action, alleging that defendants violated plaintiffs' rights to freedom of speech and due process by threatening to discipline plaintiffs for their refusal to issue a supplemental report regarding the investigation of Howe and Transue. To date, the Board has taken no further action on the report, and defendants have not lodged any disciplinary action against plaintiffs.
 
 
 28
 Defendants moved for summary judgment. The district court granted the defendants' motion. Judgment was entered dismissing the complaint, and this appeal followed.
 
 DISCUSSION
 
 29
 On appeal, plaintiffs contend essentially that they produced sufficient evidence to avoid summary judgment on their First Amendment claims and that the district court erred as a matter of law in concluding that they had no claim under 42 U.S.C. § 1983. Plaintiffs do not pursue their due process claim.
 
 
 30
 We review the district court's grant of summary judgment de novo, see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996), affirming only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether the record presents genuine issues for trial, the court must draw all inferences and resolve all ambiguities in favor of the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991). For the purpose of summary judgment, we will assume that plaintiffs' speech, as expressed in the Board's report, was protected.
 
 
 31
 To prevail on a First Amendment claim under 42 U.S.C. § 1983, plaintiffs must establish that (1) their "conduct is deserving of [F]irst [A]mendment protection" and (2) the defendants' conduct "was motivated by or substantially caused by [plaintiffs'] exercise of free speech." Rattner v. Netburn, 930 F.2d 204, 208 (2d Cir.1991) (quoting Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987)); see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Plaintiffs contend that their refusal to revise the Board report constituted protected speech and that defendants' order to address additional information in a revised report regarding the investigation of Howe and Transue violated plaintiffs' right to speak freely as guaranteed by the First Amendment.
 
 
 32
 At the heart of the First Amendment is the belief that "wisdom and justice are most likely to prevail in public decisionmaking if all ideas, discoveries, and points of view are before the citizenry for its consideration." Thomas v. Board of Educ., 607 F.2d 1043, 1047 (2d Cir.1979). Accordingly, we have repeatedly made clear that "[courts] must remain profoundly skeptical of government claims that state action affecting expression can survive constitutional objections." Id. We must be mindful, however, that the First Amendment does not protect all public employee speech. See Connick v. Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983). Specifically, the First Amendment's shield does not extend to speech and conduct closely connected with insubordination "that impedes an employee's performance of his duties or that interferes with the proper functioning of the workplace." Domiano v. Village of River Grove, 904 F.2d 1142, 1145 (7th Cir.1990); see Berry v. Bailey, 726 F.2d 670, 674 (11th Cir.1984); Schneider v. City of Atlanta, 628 F.2d 915, 918-19 (5th Cir.1980); Sprague v. Fitzpatrick, 546 F.2d 560, 565-66 (3d Cir.1976); Kannisto v. City and County of San Francisco, 541 F.2d 841, 844 (9th Cir.1976); see also Rankin v. McPherson, 483 U.S. 378, 386 n. 10, 107 S.Ct. 2891, 2898 n. 10, 97 L.Ed.2d 315 (1987); Connick v. Myers, 461 U.S. 138, 163 n. 3, 103 S.Ct. 1684, 1699 n. 3, 75 L.Ed.2d 708 (1983) (Brennan, J., dissenting).
 
 
 33
 In Connick v. Myers, an assistant district attorney was terminated after distributing a questionnaire to her co-workers that criticized her employer's decisionmaking. 461 U.S. at 140-41, 103 S.Ct. at 1686-87. The Supreme Court held that the First Amendment interest involved in that case did not require the employer to tolerate action that he "reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." Id. at 154, 103 S.Ct. at 1694. Notably, Justice Brennan, who would have precluded the questionnaire-distributor from being fired because of her speech, drew a line beyond which an employee's speech would not be protected and observed:
 
 
 34
 [p]erhaps the simplest example of a statement by a public employee that would not be protected by the First Amendment would be answering 'No' to a request that the employee perform a lawful task within the scope of his duties. Although such a refusal is 'speech,' which implicates First Amendment interests, it is also insubordination, and as such it may serve as the basis for a lawful dismissal.
 
 
 35
 Id. at 163 n. 3, 103 S.Ct. at 1699 n. 3 (Brennan, J., dissenting).
 
 
 36
 Our most penetrating examination of the record, taken in the light most favorable to plaintiffs, belies plaintiffs' claim that their conduct is deserving of First Amendment protection. As an initial matter, we observe that plaintiffs have not challenged the legal validity of the relevant police department procedure embodied in General Order 3-16. General Order 3-16, which defines the scope of plaintiffs' duties as members of the Board, required plaintiffs to perform an informal investigation for the sole purpose of advising Chief Martino. General Order 3-16 establishes that the Board "is and shall remain under the authority and direction of the Chief of Police and shall serve in an advisory capacity to the Chief."
 
 
 37
 As members of the Board, plaintiffs had a duty "to make findings of facts, draw conclusions as to the propriety of conduct, make recommendations as to disciplinary matters, etc., all in an advisory and nonbinding capacity to the Chief of Police." The "General Statement of Purpose and Discussion" of General Order 3-16 specifically states that "[w]hile it must be understood that the final decision in such matters rests with the Chief, and properly so, the assistance of an Administrative Review Board proceeding on an informal basis should help the Chief of this Department make informed, intelligent, and fair decisions."
 
 
 38
 Contrary to plaintiffs' claim that defendants ordered them to submit a report absolving the Town of liability, the record indicates that Chief Martino determined that the report was incomplete and unclear and, pursuant to General Order 3-16, ordered plaintiffs to submit a new report with instructions to consider further information to be made available to the Board. Specifically, Martino requested (1) the inclusion of the responses of the two officers who were the subject of the investigation; (2) clarification of the Board's basis for its finding and conclusion concerning the allegation regarding Howe's remark during a training class; and (3) clarification of the Board's basis for its finding and conclusion concerning certain of Transue's remarks made to officers regarding motor-vehicle stops. Plaintiffs were told that they were free to determine what if any evidentiary value this additional information had and they did not have to change any of their original findings or recommendations. Thus, Martino's instructions to the Board, pursuant to General Order 3-16, to take further action prior to submitting a completed report was lawful and within the scope of plaintiffs' employment.
 
 
 39
 By declining to take further action on the report, plaintiffs flatly refused to perform a lawful task within the scope of their duties. Such refusal to abide by a valid order is closely connected with, and can be classified as insubordination. On these facts, we cannot find any constitutionally protected conduct. See Connick v. Myers, 461 U.S. 138, 163 n. 3, 103 S.Ct. 1684, 1699 n. 3, 75 L.Ed.2d 708 (1983) (Brennan, J., dissenting). Accordingly, because plaintiffs have not engaged in conduct which implicates First Amendment protection, their claim fails at the outset.
 
 
 40
 Plaintiffs claim, however, that a veiled threat of reprisal implicit in defendants' actions created a judicially cognizable chilling effect on their First Amendment rights. According to plaintiffs, defendants' threats of disciplinary action for plaintiffs' refusal to take further action had a chilling effect on their continued expression of their original findings and conclusions of racial discrimination in the report. Plaintiffs maintain that defendants were unlawfully seeking to compel them to submit a new report with different findings and conclusions, one that would exonerate the Town. This claim is not supported by the record and likewise fails to pass constitutional muster.
 
 
 41
 While governmental action which falls short of a direct prohibition on the free exercise of speech may be subject to constitutional challenge, see Laird v. Tatum, 408 U.S. 1, 12-13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972), "not every assertion of a chilling effect will be considered a judicially cognizable First Amendment violation." Levin v. Harleston, 966 F.2d 85, 89 (2d Cir.1992). In Laird, the Supreme Court noted the importance of:
 
 
 42
 [the] established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action.
 
 
 43
 408 U.S. at 13, 92 S.Ct. at 2325 (citation and internal quotations omitted). Thus, plaintiffs must make specific allegations that indicate a deprivation of constitutional rights; general, indirect and conclusory allegations are not sufficient. See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987); Koch v. Yunich, 533 F.2d 80, 85 (2d Cir.1976).
 
 
 44
 In the case before us, we find that plaintiffs' claim that defendants' alleged threats of reprisal produced a chilling effect upon the exercise of plaintiffs' First Amendment rights is unfounded. First, as discussed above, plaintiffs were never directed to change any of their original findings or recommendations, but were simply asked to consider and incorporate additional information into their report pursuant to lawful police review board procedures. Notably, the entire investigation was governed by a valid police procedure, General Order 3-16; and as such, plaintiffs' findings and recommendations were made solely in an advisory and nonbinding capacity to Chief Martino. Martino's return of the report to plaintiffs for clarification, including Transue and Howe's responses, were for his edification so, as police chief, he could rightfully certify the report and make an informed, intelligent and fair decision. Even the secretly tape-recorded conversation among plaintiffs and Martino and Lander cannot reasonably be interpreted as intimating that some form of adverse retaliatory action would follow if plaintiffs continued to express the original views set forth in the report. In fact, it is undisputed that Lander explicitly stated, "no one is saying you have to alter your findings."
 
 
 45
 In summary, plaintiffs' allegations fall short of constitutional significance. The chilling effect alleged by the plaintiffs is speculative, indirect and remote, and there is no evidence in the record that plaintiffs did in fact suffer a cognizable constitutional deprivation. As the Supreme Court stated in Laird, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." 408 U.S. at 13-14, 92 S.Ct. at 2325-26.
 
 
 46
 Accordingly, because plaintiffs have failed to allege any viable cause of action pursuant to § 1983 for deprivation of their First Amendment rights, summary judgment dismissing this claim was proper.
 
 
 47
 We have carefully examined all of plaintiffs' remaining arguments and find them to be without merit.
 
 CONCLUSION
 
 48
 Based on the foregoing, we affirm the judgment of the district court.
 
 
 
 *
 Hon. John F. Keenan, Judge, United States District Court for the Southern District of New York, sitting by designation