[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This is an action by three police officers, the plaintiffs, Martin J. Hankard, Steven J. Kulilowski and Gregory J. Soderburg, seeking damages from the defendants, Town of Avon, Joseph Lander (Assistant town attorney) Philip K. Scheneck (Town Manager), James A. Martino (Chief of Police), and council members Richard W. Hines, Joseph C. Woodford, CT Page 9301 William J. Shea II, S. Edward Jeter and Diane Hornaday, arising from plaintiffs' service on an administrative review board to investigate the conduct of two fellow police officers.
The original complaint dated November 4, 1996, contained eleven counts.
The operative complaint now before the court is the fourth amended complaint, dated August 6, 1999, which contains six counts: count one sets out who the parties are in this action, count two contains general allegations that are used to form all the other counts, count three is a claim for intentional infliction of emotional distress (IIED) against Martino, count four is a claim for IIED against Landers, count five is a claim for violation of General Statutes § 31-51m, also known as the whistle-blower statute, and count six alleges a violation of General Statutes § 31-51q.
The defendants Schenck, Martino, Hines, Woodford, Shea, Jeter, Hornaday and the town (collectively known hereafter as the town defendants) move for summary judgment on the grounds that as a matter of law, the plaintiffs are unable to establish essential elements of their causes of action and that the principles of collateral estoppel and res judicata mandate judgment in favor of the defendants. The plaintiffs deny that their claims are precluded by collateral estoppel or res judicata and assert that genuine issues of material fact exist, requiring that this motion for summary judgment be denied.
Landers moves separately for summary judgment as to the fourth, fifth and sixth counts of the complaint on the ground there are no genuine issues of material fact, and he is entitled to judgment as a matter of law.
 -I-
In his memorandum of decision dated June 21, 1999 on a motion to strike, the facts underlying this action were laid out in a comprehensive fashion by Judge Hale on pages one through five, and therefore will not be recited here in great detail. See Hankard v. Town of Avon, Superior Court, judicial district of Hartford, Docket No. 482635 (June 21, 1999,Hale, J.)
A brief summary of these facts are as follows:
The plaintiffs served on an administrative review board to investigate and report on the behavior of two fellow police officers charged with racially discriminatory conduct. In carrying out the investigation, the CT Page 9302 plaintiffs allegedly met with resistance from heads of the police department. After completing the investigation, the plaintiffs submitted a report that chronicled their findings while also describing the alleged obstacles encountered as a result of the behavior of Martino, Landers and the other named defendants. Martino responded by issuing a memo to the plaintiffs ordering them to consider additional information not considered in their initial report. The plaintiffs refused to alter their initial findings, specifically disregarding the order from Martino, as they felt his orders were potentially unlawful. The alleged behavior of the parties during this investigation gives rise to this action.
Procedurally, this case was originally filed in federal court. SeeHankard v. Town of Avon, United States District Court, Docket No. 3:94CV1980 (AVC) (Conn. September 23, 1996). The District Court granted the defendants' motion for summary judgment as to the plaintiff's federal claims while declining to rule on the state constitutional and statutory claims.[1] This decision was affirmed on appeal. See Hankard v. Town ofAvon, 126 F.3d 418 (2d Cir. 1997). After the second amended complaint in this Superior Court action was filed, the defendants moved to strike counts three through twelve of that complaint. The court, Hale, J., granted the defendants' motion as to counts three, four, five, nine, ten, eleven and twelve, and denied the motion as to count eight. Count six, as it pertains to Martino was denied, but it was granted as to all other defendants. Lastly, count seven was stayed pending an evidentiary hearing on the issue of subject matter jurisdiction. Two subsequent amended complaints were filed, culminating in the now operative fourth amended complaint.
 -II-
The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554, (1998); Bruttomesso v. Northeastern Connecticut Sexual Assault CrisisServices, Inc., 242 Conn. 1, 5-6, (1997); Practice Book § 17-49. Additionally, because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment may be the appropriate method for resolving a claim of res judicata. Jackson v. R. S. Whipple, Inc.,225 Conn. 705, 712, (1993)
 -III- CT Page 9303
Count three, directed against defendant Martino, is a claim for intentional infliction of emotional distress, based on a combination of events, culminating with the November 11, 1994, meeting between the plaintiffs, Martino and Landers. Specifically, the plaintiffs assert that both Martino and Landers sought to "harass and intimidate the Plaintiffs into engaging in a conspiracy to destroy documents in violation of Connecticut Statutes." Martino denies making any unlawful threat, intimidation or coercion and argues further that principles of collateral estoppel prohibit the plaintiffs from pursuing their claim against him because the issue was previously decided in federal court.
In an action for intentional infliction of emotional distress, four elements must be established. (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Hiers v. Cohen, 31 Conn. Sup. 305, (1973);Petyan v. Ellis, 1200 Conn. 243, 253, (1986)]. Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. Petyan v. Ellis, supra, 254 n. 5. It is the intent to cause injury that is the gravamen of the tort. DeLaurentis v. New Haven, [220 Conn. 225, 266-67, (1991). Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy these elements is a question, in the first instance, for the court. Ancona v. ManafortBros., Inc., 56 Conn. App. 701, 711, (2000). Taylor v. Grote Weipel,Inc., Superior Court judicial district of Hartford, CV 970572570 (Wagner, J, March 4, 1997).
-III(A)-
It appears by the federal decision that the defendants' claim of collateral estoppel must fail because it does not appear that the tort of infliction of emotional damages was even considered, let alone adjudicated, by the federal court as explained in more detail in discussing Count Four below. Nonetheless, as to the element of "extreme or outrageous" behavior, Martino asserts that because two federal courts have previously found his behavior to be lawful, his actions cannot therefore be considered outrageous for purposes of this tort. While it is probably true that behavior deemed lawful by a federal judge would not be found by this court to be behavior which exceeds all bounds tolerated by a decent society, this court independently finds that the alleged actions by Martino do not constitute extreme or outrageous behavior. Accordingly, the motion must be granted as to this count because at least CT Page 9304 one of the elements of this tort have not been met.
 -IV-
Count four, directed against defendant Landers, is also a claim for intentional infliction of emotional distress. The same operative facts summarized above centering on events leading up to and including the meeting of November 11, 1994, also form the foundation for this count. Again, this defendant claims that no genuine issue of material fact exists and that the issues raised by this count has been previously ruled upon by the United States District Court and by the Second Circuit Court of Appeals. This claim is rejected because no actual ruling on the allegations of this count was made by these courts.
The United States District Court and the Second Circuit Court of Appeals rendered decisions on whether the defendants conduct violated 1) the due process rights of the plaintiffs; 2) the first amendment rights of the plaintiffs; and 3) the civil rights afforded the plaintiffs under42 U.S.C. § 1983. In reaching its decisions, the district court stated, as to the § 1983 violation that "the defendants did not violate "a right secured by the Constitution and laws of the United States.'" (Citation omitted.) Hankard v. Town of Avon, supra, United States District Court, Docket No. 3:94CV1980 (AVC). The court stated as to the due process claim that "[b]ecause Article IV of the collective bargaining agreement [for the police officer's union] provides a process whereby the plaintiffs could meaningfully contest the very conduct of which they now complain, the court concludes that no constitutional violation has occurred." Id. Finally, the court held as to theFirst Amendment claim that "[b]y refusing to take further action on the Administrative Review Board report, the plaintiffs essentially `answer[ed] `No' to a request that the employee[s] perform a lawful task within the scope of [their] duties. Although such a refusal is "speech' which implicates First Amendment interests, it is also insubordination. . . . [and] [a]s such, it may not serve as a claim for a constitutional violation.'" Id.
None of these holdings or standards address directly or indirectly the issue of whether the defendants' behavior was outrageous under Connecticut law, and therefore plaintiffs are therefore not precluded from introducing this claim in state court. Nonetheless, this claim fails for the same reason that count three failed, namely that behavior that has been deemed lawful by another court can hardly be "outrageous". Moreover, this court independently finds that Landers alleged actions were not "outrageous". His motion for summary judgment as to count four is granted. CT Page 9305
 -V-
Count five, a claim for violation, CGS § 31-51m, is directed against all the defendants. The plaintiffs claim that they were subjected to discipline, denied promotions and retaliated against as a result of their "whistle-; blowing." The town defendants argue that the plaintiffs were not "discharged, disciplined or otherwise penalized for any report by them of allegedly improper conduct." Defendant Landers also argues that the fifth count is barred in light of the preclusive effects of the federal court decisions.
-V(A)-
Section 31-51m offers protection and civil remedies to employees who disclose an employer's illegal activities or unethical practices. Section31-51m (b) states in relevant part: "No employer shall discharge, discipline or otherwise penalize any employee because the employee . . . reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body." (Emphasis added.)
This subsection contains two separate elements which invites two separate questions: 1) whether the plaintiffs were disciplined, discharged or otherwise penalized for disclosing information; and 2) whether the information communicated contained evidence of a violation or suspected violation of any state or federal law or regulation, or municipal ordinance or regulation? As to the first question, evidence submitted by the plaintiffs seems to substantiate that at least one of the plaintiffs, Sergeant Hankard, was disciplined.[2] Exhibit I, a memo from Martino to Hankard, states that Hankard was disciplined for violating policies regarding obedience to orders; failing to follow proper grievance procedures; and violating policies regarding the disclosure of confidential information. The information was allegedly disclosed to the State's Attorney's Office, the plaintiffs' attorney and the public through the media. It seems clear that Hankard was disciplined for disclosing information.
As to the second element, the plaintiffs claim that they communicated that the Defendants had attempted to destroy part of the record of proceedings by contacting the United States Attorneys Office, a public body. The United States Attorneys Office is a public body under §31-51m (a)(4).[3]
Plaintiffs further contend that "[a] physical destruction of the Plaintiff's September 13, 1994 and November 9, 1994 memos and the Chief's October 20, 1994 memo would have violated or could have reasonably been CT Page 9306 suspected of violating CGS Sections 7-109 and 53a155," dealing with destruction and tampering of documents. Again, although the evidence relied upon by the plaintiffs does not support this contention, the plaintiffs are only required to suspect a violation under § 31-51m
(b), not prove a violation.
The determination by the federal courts as to the lawfulness of Martino and landers actions included their requesting the plaintiffs to "consider" new information, as well as the conversation that took place during the November 11, 1994 meeting. Sergeant Hankard was disciplined by Martino for the disclosure of police information and for his insubordination in refusing to follow orders which were perceived by him and the other plaintiffs as illegal. The plaintiffs, viewing their argument in the most favorable light, suspected that being directed to "consider" new information amounted to an attempt by Martino and the other defendants to control or even steer their investigation. The plaintiffs' suspicion that the defendants' behavior was unlawful was, as it turns out, incorrect. See Hankard v. Town of Avon, 126 F.3d 418;Hankard v. Town of Avon, United States District Court, Docket No. 3:94CV1980 (AVC). This does not, however, negate their claim, if those suspicions were made in good faith and a reasonable person under the same or similar circumstances would have harbored the same suspicions about Martino's orders. See e.g. LaFond v. General Physics Services Corp.,50 F.3d 165 (2d Cir. 1995); Sullivan v. Massachusetts Mutual Life Ins.Co., 802 F. Sup. 716 (D. Conn. 1992). Permitting an agency to punish an employee for "blowing the whistle" just because the reported violation turns out to be wrong would have a chilling effect on prospective whistle blowers and negate the purpose of the statute. Notwithstanding the fact that none of the evidence offered demonstrates that the defendants actually attempted to destroy part of the record of the proceedings and the federal courts have found that the behavior of Martino and/or landers was lawful, the allegations under § 31-51m are sufficient because the plaintiffs reported a suspected violation and one of them was punished for that reporting.
Whether the plaintiffs' suspicions were reasonable under the circumstances, so as to shield Hankard from being the subject of discipline for his actions, is an issue of material fact upon which reasonable minds could differ. Since the threshold of requirements subsection (b) of § 31-51m have been met, consideration must be given whether Count Five, in its entirety is subject to the motion for summary judgment.
-V(B)-
Section 31-51m (c) states in relevant part: "Any employee who is CT Page 9307 discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting allavailable administrative remedies, bring a civil action . . . for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred."
The plaintiffs contend that they "dingently pursued their grievances for years until they withdrew them without prejudice, and that such withdrawal functionally constitutes an exhaustion of remedies, relying onGenovese v. Gallo Wine Merchants, 226 Conn. 475, 481, (1993) and §31-51bb. Section 31-51bb provides: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."
Genovese holds that "an employee who does not exhaust the grievance procedures established in a collective bargaining agreement may pursue a cause of action in the Superior Court if the cause of action is premised on an independent statutory claim." Id. The Court further states "[s]ection 31-51bb provides that a cause of action arising under the state or federal constitution or state statute cannot be lost solely because the employee is covered by a collective bargaining agreement."
In Saccardi v. Board of Education, 45 Conn. App. 712, (1997) the appellate court stated "[i]t is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. . . . The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive the employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of CT Page 9308 collective [bargaining] agreements. Hunt v. Prior, 236 Conn. 421,431-32, (1996)."
At first blush, the language of Hunt, the Supreme Court case relied on by the Sacarrdi court, would seem to be in opposition to Genovese. A closer reading of Hunt, however, reveals that the Hunt court consideredGenovese and did not consider the two holdings to be inapposite. "InGenovese v. Gallo Wine Merchants, Inc., 226 Conn. 475, 479-82, 628 A.2d 946
(1993), we held that General Statutes § 31-51bb authorizes an employee who has failed to exhaust the grievance procedures in a collective bargaining agreement to pursue a cause of action in the Superior Court if the cause of action arises under the state or federal constitution or under a state statute. Because the plaintiff's contract claims, in contrast to his claims under 42 U.S.C. § 1983, do not arise under any constitutional or state statutory provision, § 31-51bb
does not relieve the plaintiff of his obligation to exhaust the administrative remedies available to him under the collective bargaining agreement." Hunt v. Prior, 236 Conn. 421, 429 n. 22, (1996). Herein, § 31-51bb relieves the plaintiffs of their duty to exhaust their available administrative remedies under their collective bargaining agreement, as the plaintiffs' claim arises under a state statutory provision, namely § 31-51m. Further, while § 31-51m (c) offers ageneral requirement of administrative exhaustion, § 31-51bb offers aspecific exception to that general rule. See, e.g. Beccia v. Waterbury,185 Conn. 445, 458, 441 A.2d 131 (1981); New Haven Water Co. v. NorthBranford, 174 Conn. 556, 564-65, 392 A.2d 456 (1978); Pizzola v. Planning Zoning Commission, 167 Conn. 202, 206, 355 A.2d 21 (1974); State exrel. Sloane v. Reidy, 152 Conn. 419, 425, 209 A.2d 674 (1965) ; Moran v.Bens, 144 Conn. 27, 30, 127 A.2d 42 (1956)
Count five is clearly based on an "independent statutory claim," namely § 31-51m, which brings the count within the purview of the holding inGenovese. Defendants claims based on lack of exhaustion of administrative remedies is rejected.
 -V(C)-
Landers additionally argues that the plaintiffs' § 31-51m claim is barred "in light of the preclusive effects of the federal court decisions."
The court does not agree with the conclusions drawn by defendant landers as in the prior claims of preclusion by the federal courts. While these courts did indeed determine that the actions of landers and other defendants were lawful, and that under Connick v. Meyers, 461 U.S. 138,149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the plaintiffs actions CT Page 9309 amounted to insubordination, the elements required for a First Amendment claim, however, are not the same as those required for the plaintiffs to fall under the protection of § 31-51m. See Rattner v. Netburn,930 F.2d 204, 208 (2d Cir. 1991); Donahue v. Windsor Locks Board of FireCommissioners, 834 F.2d 54, 58 (2d Cir. 1987); Mt. Healthy City SchoolDistrict Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568,50 L.Ed.2d 471 (1977) Moreover, the federal courts never assessed the merits of whether the plaintiffs actions amounted to whistle-blowing under § 31-51m. The Second Circuit stated only that they [could] not find any constitutionally protected conduct"; 126 F.3d 418, 423; and held that "because plaintiffs have not engaged in conduct which implicatesFirst
Amendment protection, their claim fails at the outset." Id. This holding does not invoke the principle of collateral estoppel since the plaintiffs need only to report what is, in good faith, suspected to be a violation of a state or federal law. Even though the requests made of plaintiff were determined to be lawful, they were suspected to be unlawful by the plaintiffs when received. Plaintiffs' claims under § 31-51m are not necessarily precluded by the rulings of either federal court. The motions for summary judgment as to count five are both hereby denied.
 -VI-
Count six, a claim for violation of § 31-51q, is also directed at all defendants, Section 31-51q provides:
 "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state [of Connecticut], provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."
The Plaintiffs explain their claim under this count by requesting this Court to consider whether CGS Section 31-51q, which protects speech under CT Page 9310 Article First, Section 3, 4, and 14 of "Connecticut State Constitution[4], refusing to destroy documents is functionally the same as saying "no' to a lawful order under the Connick v.Myers standard. The Plaintiff argues that since such an order could reasonably be considered to be illegal under Connecticut law that the Connecticut Constitution should provide more protection to the speaker then its Federal counterpart."
It would appear that the plaintiffs are attempting to argue that "refusing to destroy documents" is not simply saying "no" to a lawful order, but something more. Further, it seems that the plaintiffs believe that where an act is potentially illegal under Connecticut law that act should be afforded more protection under the Connecticut Constitution than is available under the Unites States Constitution. No support or authority for these arguments is offered by the plaintiffs for these claims.
As previously noted, the plaintiffs were not "ordered" to "destroy" anything. Both the district court and the Second Circuit held that the defendants' conduct did not violate 42 U.S.C. § 1983. It can be inferred, therefore, based on the language of Cotto v. UnitedTechnologies Core., 251 Conn. 1, 17, (1999), that what was ruled to have failed in federal court will also fail here, especially since three courts conducted a thorough examination and reached persuasive conclusions. Accordingly, the motions for summary judgment as to count six are granted.
The motion by the town defendants for summary judgment is granted as to counts three and six is denied as to count five. The motion for summary judgment by defendant Landers is granted as to counts four and six, and is denied as to count five.
 Wagner, J. JTR