**Sally Pistorio MCGRATH and John McGrath, Plaintiffs,**

v.

**NASSAU HEALTH CARE CORP. and Eric S. Rosenblum, Defendants.**

No. 00–CV–6454(TCP)(WDW).

United States District Court, E.D. New York.

July 29, 2002.

Steven Ian Locke, Carabba, Locke & Olsen, LLP, New York City, for Plaintiffs.

Brian Joseph Clark, Clifton Budd & Demaria, LLP, Peter L. Altieri, Ann L. Moscow, Epstein Becker & Green, P.C., New York City, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Nassau Health Care Corporation ("NHCC") moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Amended Complaint.[1] For the reasons stated below, that motion is DENIED. NHCC is directed to answer Plaintiffs' Amended Complaint within twenty days of receiving this Memorandum and Order.

## BACKGROUND

This is a civil rights case. Plaintiffs Sally Pistorio McGrath ("McGrath") and John McGrath allege: (1) that NHCC's former board chairman Eric Rosenblum ("Rosenblum"), sexually harassed McGrath through a litany of lewd activities and untoward statements; and (2) that NHCC negligently permitted Rosenblum to continue those practices by not terminating him. Plaintiffs currently assert hostile work environment and *quid pro quo* claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York Executive Law, Equal Protection and First Amendment claims brought under 42 U.S.C. § 1983, a New York Executive Law marital status discrimination claim, and claims for assault, battery, intentional infliction of emotional distress and loss of consortium. (Am.Compl.¶¶ 87–113.)

### A. Factual Background

The Court previously related the factual background of this case in its November

---

1. Specifically, NHCC moves to dismiss: (1) Sally Pistorio McGrath's hostile work environment and *quid pro quo* claims brought under Title VII of the Civil Rights Act of 1964 on grounds that she failed to exhaust her administrative remedies; (2) Sally Pistorio McGrath's discriminatory retaliation claims brought under Title VII of the Civil Rights Act of 1964 and the New York State Executive Law on grounds that they were previously withdrawn and that they are not exhausted; (3) Sally Pistorio McGrath's First Amendment (retaliation and chilling) and Equal Protection claims brought via 42 U.S.C. § 1983 for failure to state a claim; (4) Sally Pistorio McGrath's common law negligence claim on grounds that it was withdrawn and is barred by the New York Worker's Compensation Law; (5) John McGrath's loss of consortium claim; (6) Sally Pistorio McGrath's New York Executive Law claim for marital status discrimination; and (7) Sally Pistorio McGrath's

punitive damages claim on grounds that it was withdrawn and may not be maintained against a public benefit corporation.

Plaintiffs concede that they withdrew their discriminatory retaliation claims brought under Title VII of the Civil Rights Act of 1964 and their negligence claims, and also confirm that they do not seek punitive damages from NHCC. Accordingly, the only remaining claims in dispute on this motion are: (1) Sally Pistorio McGrath's hostile work environment and *quid pro quo* claims brought under Title VII of the Civil Rights Act of 1964; (2) Sally Pistorio McGrath's First Amendment (retaliation and chilling) and Equal Protection claims brought under 42 U.S.C. § 1983; (3) John McGrath's loss of consortium claim; (4) Sally Pistorio McGrath's New York Executive Law marital discrimination claim; and (5) Sally Pistorio McGrath's and John McGrath's tort claims.

30, 2001 Memorandum and Order. Familiarity with that order is presumed. The Court will, nonetheless, restate those facts necessary to decide this motion.

### 1. The Parties

McGrath was, at the time the Amended Complaint was filed, a thirty-six year old woman who resided in Jericho, New York. (Am.Compl.¶ 2.) John McGrath is her husband. (Am.Compl.¶ 3.)

NHCC is a New York public benefit corporation that maintains its principal place of business in East Meadow, New York. (Am.Compl.¶ 4.) NHCC operates the Nassau University Medical Center ("Medical Center"). (Am.Compl.¶ 5.)

Rosenblum is an attorney and the former chairman of NHCC's board of directors. (Am.Compl.¶¶ 6–7.) He was also McGrath's supervisor. (Am.Compl.¶ 6.) Rosenblum continues to serve as a member of NHCC's board of directors. (Am. Compl.¶ 6.)

### 2. McGrath's Employment at NHCC

NHCC hired McGrath as a temporary employee in June of 1999. (Am.

Compl.¶ 19.) McGrath became a full-time NHCC employee in September of 1999. (Am.Compl.¶ 21.)

Rosenblum allegedly began sexually harassing McGrath on a consistent basis in the first week of September of 1999. (Am. Compl.¶ 27.) That alleged sexual harassment included: (1) a litany of untoward verbal and written sexual remarks and suggestions;[2] (2) physical and verbal intimidation;[3] (3) actions designed to alienate McGrath from John McGrath;[4] (4) vulgar gesturing; and (5) assault and battery.[5] (Am.Compl.¶¶ 27, 33–40, 44–45, 48–49, 56, 58, 60, 62, 65–66, 70, 78–79.)

McGrath contends that NHCC's director of labor relations, Frank Lattimer, heard several of Rosenblum's sexually harassing comments and that he told her to "watch herself because Rosenblum was the 'boss.' " (Am.Compl.¶ 50.) McGrath also avers that she told the Medical Center's diversity department head on several occasions that Rosenblum was sexually harassing her. (Am.Compl.¶ 51.)

Members of NHCC's senior management eventually became aware of Rosen-

---

2. Rosenblum's alleged verbal statements are generally too numerous to relate. However, those statements are characterized by his request that McGrath and another female NHCC employee remove their clothing and engage in group sex with him. (Am. Compl.¶ 56.) Rosenblum' alleged written comments are typified by a note to McGrath that stated " 'suck on my cock now please.' " (Am.Compl.¶ 58.)

3. Rosenblum's pertinent alleged physical intimidation included: (1) grabbing McGrath's phone from her and throwing the contents of her desk to the floor; and (2) standing in close physical proximity to McGrath so that he could whisper sexual remarks to her. Those activities do not encompass all of Rosenblum's alleged physical intimidation. (Am.Compl.¶¶ 34–36.)

Rosenblum's alleged verbal intimidation consisted of statements to McGrath that he

was "the only person ... who ... [could] fire ... [her]," and that he could do whatever he wished because "he 'had every judge in Nassau County in his pocket.' " (Am.Compl.¶¶ 56, 84.)

4. Those alleged actions include: (1) telling McGrath she would be stupid to marry John McGrath; (2) denying her vacation time to get married or plan her wedding; (3) telling her that "she should ... be [sleeping with] him, and not going home to John [McGrath];" and (4) having a friend repeatedly telephone McGrath over her wedding weekend to discourage her from marrying John McGrath. (Am.Compl.¶¶ 32, 63, 66–67.)

5. McGrath alleges that Rosenblum: (1) grabbed her buttocks on two separate occasions; (2) placed her hand on his crotch; and (3) pinned her against a wall and grabbed her breasts. (Am.Compl.¶¶ 42, 62, 65.)

blum's alleged behavior. On July 20, 2000, and again on July 21, 2000, McGrath met with the Medical Center's chief executive officer, Jerald Newman ("Newman"), and its general counsel, Lou Savinetti ("Savinetti"), to discuss Rosenblum's behavior towards her. *See McGrath v. Nassau Health Care Corp.*, 204 F.R.D. 240, 242 (E.D.N.Y.2001); (Am.Compl.¶ 71.) At the July 21, 2000 meeting, Newman and Savinetti had a copy of Rosenblum's note requesting oral sex from McGrath. (Am. Compl.¶ 73.) Newman and Savinetti apparently launched an investigation into Rosenblum's behavior towards McGrath after that second meeting. (Am. Compl.¶ 77.)

As a result of that investigation, Rosenblum was removed as chairman of NHCC's board of directors. (Am.Compl.¶ 76.) McGrath was also reassigned to work for another NHCC employee and was given a parking space closer to the building in which she worked. (Am.Compl.¶ 77.)

On July 25, 2000, McGrath filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). (Am.Compl.¶ 12.) The EEOC issued McGrath a right-to-sue letter on August 31, 2000. (Am.Compl.¶ 13.) This suit followed.

### B. Procedural History

On October 30, 2000, Plaintiffs filed a Complaint. That Complaint asserted Title VII and the New York Executive Law sexual harassment claims, negligence claims, and claims for loss of consortium. (Pls.' Mem. in Opp.Def.'s Mot. to Dismiss at 8.)

On August 31, 2001, the Court granted Plaintiffs leave to file an Amended Complaint. The Amended Complaint contains: (1) hostile work environment and *quid pro quo* sexual harassment claims under Title VII and the New York Executive Law; (2) Equal Protection and First Amendment claims brought under § 1983; (3) a New York Executive Law marital discrimination claim; (4) common law claims for assault and battery; (5) an intentional infliction of emotional distress claim; and (6) a claim for loss of consortium. (Pls.' Mem. in Opp.Def.'s Mot. to Dismiss at 8–9.)

On October 17, 2001, NHCC moved to dismiss Plaintiffs' Amended Complaint. On December 21, 2001, the parties appeared to argue that motion.

After hearing oral argument, the Court reserved decision. The Court now denies NHCC's motion.

### DISCUSSION

### A. Standard on Rule 12(b)(6) Motions to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits both partial and complete dismissal for " 'failure to state a claim upon which relief can be granted.' " *Sweet v. Sheahan*, 235 F.3d 80, 84 (2d Cir.2000) (quoting FED.R.CIV.P. 12(b)(6)). On Rule 12(b)(6) motions to dismiss, Courts may not consider matters outside the pleadings, *see Wall v. Roman*, 18 Fed. Appx. 41, 42 (2d Cir.2001); *Leonard F. v. Israel Discount Bank*, 199 F.3d 99, 107 (2d Cir.1999), but may consider documents attached to pleadings, documents referenced in pleadings or documents that are integral to the pleadings. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002). Courts must also " 'take all factual allegations as true and [must] construe all reasonable inferences in the plaintiff's favor.' " *Wall*, 18 Fed.Appx. at 42 (quoting *Lee v. Bankers Trust*, 166 F.3d 540, 543 (2d Cir.1999) (internal citations omitted)); *Sweet*, 235 F.3d at 84.

On Rule 12(b)(6) motions to dismiss, courts assess only the legal feasability of

the complaint and whether plaintiffs have pled claims on which they are entitled to discovery. *See Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000); *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). Courts do not consider whether plaintiffs are ultimately likely to prevail at trial on those claims. *Sims,* 230 F.3d at 20; *Chance,* 143 F.3d at 701. Accordingly, dismissal is only appropriate if the plaintiff " 'can prove no set of facts in support of his claim which would entitle him to relief.' " *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Lee,* 166 F.3d at 543.

### B. Title VII Claims

■ NHCC argues that McGrath's Title VII hostile work environment and *quid pro quo* claims should be dismissed because McGrath did not administratively exhaust those claims. NHCC contends that McGrath did not administratively exhaust those claims because the EEOC, pursuant to an administrative regulation, issued McGrath a right-to-sue letter only thirty-seven days after she filed her EEOC complaint. NHCC accordingly posits that the EEOC prematurely issued McGrath a right-to-sue letter and that her Title VII claims, brought to this Court by authority of that letter, are procedurally defective. NHCC is mistaken.

Aggrieved employees may only bring Title VII claims in federal district court after filing timely EEOC charges and receiving an EEOC right-to-sue letter. 42 U.S.C. § 2000e–5(e) (2000); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001); *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 83 (2d Cir.2001). Administrative exhaustion is a precondition to maintaining Title VII actions in district court, and plaintiffs may only pursue claims in district court that were either

included in, or that are reasonably related to, allegations contained in EEOC complaints. *Legnani,* 274 F.3d at 686; *Holtz,* 258 F.3d at 83; *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000) (relating that administrative exhaustion is only a precondition to bringing a Title VII action in federal district court and is not a jurisdictional requirement).

Title VII imposes a 180–day waiting period from the time EEOC charges are filed until the time the EEOC must either commence an action on the complainant's behalf or issue a right-to-sue letter to the complainant. 42 U.S.C. § 2000e–5(f)(1). However, pursuant to an administrative regulation, the EEOC may issue right-to-sue letters to complainants before the 180–day waiting period has expired if "[an authorized EEOC representative] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2) (2002).

Circuits have split on whether district courts may entertain suits commenced under right-to-sue letters issued by the EEOC before the 180–day waiting period has expired. *Compare Martini v. Fed. Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1347 (D.C.Cir.1999) (concluding that suits in district court based on early right-to-sue letters are premature) *with Sims v. MacMillan,* 22 F.3d 1059, 1060 (11th Cir.1994) (holding that early right-to-sue letters do not preclude suit in district court), *and Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir.1984) (concluding same), *and Walker v. United Parcel Serv.,* 240 F.3d 1268, 1274 (10th Cir.2001) (following *Sims* and *Brown* ). The Second Circuit has not

yet decided that question.[6] *Arroyo v. WestLB Admin., Inc.*, 2000 WL 562425, *1, 213 F.3d 625 (2d Cir.2000) (relating that the Second Circuit has not previously addressed that question and declining to do so).

District courts in this circuit have consistently split on the propriety of early right-to-sue letters.[7] Courts within the Eastern District of New York have even reached conflicting conclusions. *See, e.g., Commodari v. Long Island Univ.*, 89 F.Supp.2d 353, 382 (E.D.N.Y.2000) (Trager, J.) (upholding suits commenced under early right-to-sue letters); *Rodriguez v. Connection Tech.*, 65 F.Supp.2d 107, 110 (E.D.N.Y.1999) (Spatt, J.) (striking suits commenced under early right-to-sue letters).

Courts in this circuit that have declined to entertain early right-to-sue letter cases argue that "Congress contemplated that investigation and conciliation efforts on the part of the EEOC ... [are] an integral part of the Title VII remedy, and that the EEOC is, therefore, required to make some effort at investigating a charge and conducting some conciliation between employer and employee during the 180–day period after the filing of a charge of discrimination." *Commodari*, 89 F.Supp.2d at 382.

Courts in this circuit that accept early right-to-sue letter cases reason that "Congress included the 180–day period as a statutory 'outer limit' after which the EEOC must cede its exclusive jurisdiction; ... [Congress] did not intend to bar EEOC from 'waiving its exclusive jurisdiction before expiration of the 180 days, if it believes that doing so will benefit claimants and facilitate the purposes of Title VII.'" *Hussein*, 2000 WL 776920, at *4 (quoting *Figueira v. Black Entm't Television, Inc.*, 944 F.Supp. 299, 305 (S.D.N.Y. 1996)).

Those courts that permit suits to proceed based on early right-to-sue letters

---

6. The Second Circuit previously upheld the validity of early right-to-sue letters in a case involving two consolidated appeals. *See Weise v. Syracuse Univ.*, 522 F.2d 397, 412 (2d Cir.1975). However, the *Weise* holding: (1) was expressly limited to its facts; (2) was decided two years before the current regulation permitting the EEOC to issue early right-to-sue letters was promulgated; (3) was decided when EEOC procedural requirements were considered jurisdictional; (4) involved, in the first consolidated case, the merger of two EEOC charges, one of which had been pending for over one year before the right-to-sue letter was issued; and (5) involved, in the second case, EEOC charges related to New York State Division of Human Rights charges filed over two years before the right-to-sue letter was issued (which was found to comply with Title VII's then jurisdictional requirements). *Weise*, 522 F.2d at 401–03, 412–13; *see Hussein v. Pierre Hotel*, No. 99 Civ. 2715, 2000 WL 776920, *4 n. 4 (S.D.N.Y. June 14, 2000). Accordingly, while *Weise* is pertinent, it is not controlling.

7. *Compare Hussein*, 2000 WL 776920, at *4 n. 4 (permitting suits commenced after early right-to-sue letter was issued) *and Hellgren v. Bell Atl. Corp.*, No. 99 Civ. 11937, 2000 WL 726496, at *1 (S.D.N.Y. May 30, 2000) (concluding same), *and Huang v. Gruner + Jahr United States Publ'g.*, No. 99 CIV. 5058, 2000 WL 640660, at *1 (S.D.N.Y. May 17, 2000) (finding same), *and Parker v. Metro. Transp. Auth.*, 97 F.Supp.2d 437, 445 (S.D.N.Y.2000) (holding same), *and Commodari v. Long Island Univ.*, 89 F.Supp.2d 353, 382 (E.D.N.Y. 2000) (finding same), *and Kahn v. Objective Solutions, Int'l*, 86 F.Supp.2d 377, 380 (S.D.N.Y.2000) (permitting same), *and Palumbo v. Lufthansa German Airlines*, No. 98 Civ. 5005, 1999 WL 540446, at *2 (S.D.N.Y. July 26, 1999) (allowing same) *with Stafford v. Sealright, Inc.*, 100 F.Supp.2d 137, 139 (N.D.N.Y.2000) (finding that issuance of early right-to-sue letter violates 180–day waiting provision), *and Rodriguez v. Connection Tech.*, 65 F.Supp.2d 107, 110 (E.D.N.Y.1999) (finding same), *and Stetz v. Reeher Enters.*, 70 F.Supp.2d 119, 124 (N.D.N.Y.1999) (following same).

posit more compelling arguments. First, the administrative regulation that authorizes the EEOC to issue early right-to-sue letters does not conflict with the language of 42 U.S.C. § 2000e–5(f)(1) or its purpose, "which is to ensure that parties are not required to wait indefinitely for administrative action." *Huang,* 2000 WL 640660, at *2. Accordingly, the EEOC regulation authorizing early right-to-sue letters is based on a permissible construction of § 2000e–5(f)(1) and should therefore be upheld. *Id.* (citing *Chevron U.S.A., Inc. v. Natural Res. Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (articulating test for reviewing administrative regulations)).

Second, the EEOC is overburdened with pending cases and lacks the resources to investigate all of those cases within the 180–day period imposed by § 2000e–5(f)(1). *Hallgren,* 2000 WL 726496, at *1; *Parker v. Metro. Transp. Auth.,* 97 F.Supp.2d 437, 445 (S.D.N.Y.2000); *see Commodari,* 89 F.Supp.2d at 382. Invalidating the early right-to-sue letter process will not alleviate that resource shortage or galvanize the EEOC into conducting quicker investigations. *See Commodari,* 89 F.Supp.2d at 382. Invalidating that process will only encourage the EEOC to hold charges in limbo for the 180–day period before issuing right-to-sue letters. *See id.*

Finally, dismissing McGrath's claims on grounds that she received her right-to-sue letter from the EEOC before the statutorily imposed 180–day waiting period had expired is inequitable, will result in wasted resources and penalizes McGrath for the EEOC's procedures. McGrath has already successfully litigated several issues in this action and may have a meritorious case.[8] If this Court dismisses McGrath's Title VII claims on procedural grounds

and she successfully reasserts those claims after receiving a proper right-to-sue letter (assuming that is currently even possible), she will eventually end up where she is now, with only wasted time and effort to show for it. If the Court dismisses McGrath's Title VII claims and she lacks the resources or right to reassert those claims, a plaintiff with potentially meritorious causes of action will be denied her day in court on those claims simply because the EEOC acted prematurely.

Accordingly, it is improper to dismiss McGrath's Title VII claims on grounds that the early right-to-sue letter is defective because: (1) the EEOC regulation permitting early right-to-sue letters comports with § 2000e–5(f)(1); (2) dismissing early right-to-sue letter cases is unsound as a policy matter; and (3) dismissing McGrath's Title VII claims based on the early right-to-sue letter would be inequitable. Therefore, NHCC's Motion to Dismiss McGrath's Title VII claims is denied.

**C. Claims Brought Under 42 U.S.C. § 1983**

NHCC next argues for dismissal of McGrath's First and Fourteenth Amendment claims brought under § 1983. NHCC contends that those claims must be dismissed because McGrath failed to plead that NHCC maintained a custom or policy that violated those rights. NHCC is incorrect.

**1. First Amendment Claims**

**a. Retaliation Claim**

■ McGrath alleges that Rosenblum retaliated against her for complaining about his alleged sexual harassment and that NHCC maintained a custom or policy that permitted Rosenblum to retaliate

---

**8.** This Court is not endorsing McGrath's case.

against her. McGrath's allegations state a viable First Amendment retaliation claim against NHCC.

To state *prima facie* First Amendment retaliation claims, plaintiffs must plead: (1) that their speech or conduct was protected; (2) that the defendant took adverse action against them; and (3) a causal connection between the protected speech and the adverse action taken against them. *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001); *Moskowitz v. Coscette,* 3 Fed. Appx. 1, 4 (2d Cir.2001); *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000).

Speech from governmental employees must be on matters of public concern to be protected. *See Grillo v. N.Y. City Transit Auth.,* 291 F.3d 231, 235 (2d Cir.2002); *Knight v. Conn. Dep't of Pub. Health,* 275 F.3d 156, 164 (2d Cir.2001); *Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F.3d 98, 105–06 (2d Cir.2001). Matters are of public concern if they relate "to ... political, social or other ... [issues of] concern to the community." *Garcia,* 280 F.3d at 105; *see Diesel,* 232 F.3d at 108; *Hale v. Mann,* 219 F.3d 61, 71 (2d Cir. 2000).

Whether speech concerns public or private matters is a question of law for courts to decide. *Grillo,* 291 F.3d at 235, *Moskowitz,* 3 Fed.Appx. at 4, *Hale,* 219 F.3d at 70. Complaints about system-wide or pervasive sexual harassment in public organizations may be matters of public concern. *See Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 143–44 (2d Cir.1993); *Wise v. New York City Police Dep't,* 928 F.Supp. 355, 372–73 (S.D.N.Y.1996); *Poulsen v. City of N. Tonawanda,* 811 F.Supp. 884, 894 (W.D.N.Y.1993); *see also Collins v. Christopher,* 48 F.Supp.2d 397, 408 (S.D.N.Y.1999).

McGrath alleges that she advised the head of the Medical Center diversity department several times that Rosenblum was sexually harassing her. (Am. Compl.¶ 51.) McGrath further avers that Rosenblum sexually harassed another female employee by asking that female employee to disrobe and engage in group sex with him and McGrath. (Am.Compl.¶ 56.)

Accepting the veracity of those allegations, and construing them in the best light possible, *see Wall,* 18 Fed.Appx. at 42, it is reasonable to assume that McGrath mentioned Rosenblum's sexual harassment of other female employees to NHCC officials on one of the numerous occasions that she complained about her own difficulties with Rosenblum. Liberally construed, those complaints would concern system-wide or pervasive misconduct, and would qualify McGrath's speech as a matter of public concern. *See Saulpaugh,* 4 F.3d at 143–44; *Wise,* 928 F.Supp. at 372–73; *Poulsen,* 811 F.Supp. at 894; *see also Collins,* 48 F.Supp.2d at 408. Therefore, McGrath's speech may be protected. *See Grillo,* 291 F.3d at 235; *Knight,* 275 F.3d at 164; *Garcia,* 280 F.3d at 105–06.

Construing the facts and inferences in her favor, *see Wall,* 18 Fed.Appx. at 42, McGrath also suffered adverse employment consequences from exercising her First Amendment rights. In response to her complaints about Rosenblum, NHCC reassigned McGrath and gave her a parking space closer to the building. (Am. Compl.¶ 77.)

Those two remedial measures constitute adverse employment action for two reasons. First, McGrath's new position at NHCC appears to have provided less contact with NHCC senior management (and certainly provided less contact with its chairman of the board, Rosenblum), which arguably renders that new position a demotion. Second, while a parking spot closer to the building could be viewed as a benefit, it also designated McGrath as an

employee who had to be differentiated and segregated. Accordingly, NHCC's two remedial measures may constitute adverse employment action for purposes of this motion. *See Dawes,* 239 F.3d at 492; *Moskowitz,* 3 Fed.Appx. at 4; *Diesel,* 232 F.3d at 107.

Finally, there may be a causal connection between the adverse employment action taken by NHCC against McGrath and McGrath's protected speech, because the former was evidently spawned by the latter. *See Dawes,* 239 F.3d at 492; *Moskowitz,* 3 Fed.Appx. at 4; *Diesel,* 232 F.3d at 107. NHCC reassigned McGrath and gave her a new parking space because she complained about Rosenblum's sexual harassment.

Therefore, McGrath has pled a *prima facie* First Amendment retaliation claim against NHCC. *See Dawes,* 239 F.3d at 492; *Moskowitz,* 3 Fed.Appx. at 4; *Diesel,* 232 F.3d at 107–08; *see also Garcia,* 280 F.3d at 105; *Hale,* 219 F.3d at 71. Dismissal of that claim is accordingly improper.

### b. Action that Chills Speech

■ McGrath also alleges that Rosenblum impermissibly chilled her speech by threatening her, and that NHCC maintained a custom or policy that permitted him to do so. McGrath has properly stated that claim against NHCC.

Governmental action that falls short of a direct prohibition on speech may nonetheless be constitutionally impermissible for § 1983's purposes if that governmental action improperly chills the exercise of free speech. *See Hankard v. Town of Avon,* 126 F.3d 418, 423 (2d Cir.1997); *Levin v. Harleston,* 966 F.2d 85, 89 (2d Cir.1992); *Aebisher v. Ryan,* 622 F.2d 651, 655 (2d Cir.1980). Not all governmental action that chills expression results in a judicially cognizable claim, however. *Hankard,* 126

F.3d at 423; *Levin,* 966 F.2d at 89; *Walsh v. City of Auburn,* 2000 WL 976900, at *6 (N.D.N.Y. July 11, 2000).

For governmental action that chills speech to be actionable, plaintiffs must show that they were injured, or are in immediate danger of being injured, because of the allegedly chilling behavior. *Hankard,* 126 F.3d at 423. Moreover, to state claims properly, plaintiffs must specifically allege the actions that impermissibly chilled their speech. *Hankard,* 126 F.3d at 423; *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987); *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976).

Construing the facts and inferences in the light most favorable to McGrath, *see Wall,* 18 Fed.Appx. at 42, Rosenblum engaged in behavior that unconstitutionally chilled McGrath's speech. McGrath avers that Rosenblum repeatedly threatened that "he could do whatever he wanted to her . . . because he 'had every judge in Nassau County in his pocket'" and that he was "'the only person in this entire place who . . . [could] fire . . . [McGrath].'" (Am.Compl.¶¶ 56, 84.) Rosenblum allegedly leveled those threats at McGrath both to silence her and to dissuade her from seeking protection or redress. (Am. Compl.¶ 85.)

Those threats may be said to have placed McGrath in immediate danger of losing her job. *See Hankard,* 126 F.3d at 423. McGrath specifically alleged those threats. *See Hankard,* 126 F.3d at 423; *Alfaro Motors, Inc.,* 814 F.2d at 887; *Koch,* 533 F.2d at 85.

Accordingly, McGrath has stated a colorable chilling claim for Rule 12(b)(6)'s purposes. *See Hankard,* 126 F.3d at 423; *Levin,* 966 F.2d at 89; *Aebisher,* 622 F.2d at 655. Dismissal of that claim is consequently improper.

### c. Municipal Custom or Policy

■ While McGrath has stated *prima facie* First Amendment claims, she still must show that her First Amendment rights were violated by a custom or policy maintained by NHCC to hold NHCC liable. McGrath has done so.

To sustain actions brought under § 1983 against governmental entities, plaintiffs must show they were deprived of a constitutional right because of a municipal custom or policy. *Johnson v. New York*, 21 Fed.Appx. 41, 43 (2d Cir.2001); *Tenenbaum v. Williams*, 193 F.3d 581, 597 (2d Cir.1999); *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 142 (2d Cir.1999). Municipal liability in actions brought under § 1983 may not be premised on *respondeat superior*. *Ciraolo v. City of New York*, 216 F.3d 236, 242 (2d Cir.2000); *Clue v. Johnson*, 179 F.3d 57, 62 (2d Cir.1999); *Schwimmer v. Kaladjian*, 1998 WL 708818, *3, 164 F.3d 619 (2d Cir.1998).

Public benefit corporations are governmental entities for § 1983's purposes. *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 917 (2d Cir.1987); *Ortega v. New York City Off–Track Betting Corp.*, No. 97 Civ. 7582, 1999 WL 342353, at *5–6 (S.D.N.Y. May 27, 1999); *Estes–El v. New York State Dept of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau*, No. 95 Civ. 3454, 1997 WL 342481, at *3–4 (S.D.N.Y. June 23, 1997). Accordingly, to maintain actions brought under § 1983 against public benefit corporations, plaintiffs must show that those corporations maintained a custom or policy that deprived them of a constitutional right. *See Johnson*, 21 Fed.Appx. at 43; *Tenenbaum*, 193 F.3d at 597; *Dangler*, 193 F.3d at 142; *see also Rose*, 828 F.2d at 917; *Ortega*, 1999 WL 342353 at *5–6; *Estes–El*, 1997 WL 342481, at *3–4.

A municipal custom or policy need not be expressly stated in a written statute to be actionable. *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991). A municipal custom or policy may instead be shown by " 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *DeCarlo v. Fry*, 141 F.3d 56, 61–62 (2d Cir.1998) (quoting *Ricciuti*, 941 F.2d at 123); *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996); *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996). A municipal custom or policy may also be shown by "persistent and widespread" constitutional violations that are so pervasive that policy makers may be presumed to have acquiesced to those practices. *See Herrera v. Safir*, 17 Fed.Appx. 41, 43 (2d Cir.2001); *Jeffes*, 208 F.3d at 61; *Sorlucco*, 971 F.2d at 870–71. Finally, actions taken by persons whose activities reflect official policy may constitute a custom or policy for § 1983's purposes. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir.2000); *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 137 (2d Cir.1999).

Construing the facts and inferences in the light most favorable to her, *see Wall*, 18 Fed.Appx. at 42, McGrath has demonstrated that NHCC maintained a custom or policy that: (1) permitted Rosenblum to retaliate against her for exercising her First Amendment rights; and (2) that impermissibly chilled her First Amendment rights.

First, McGrath's reassignment may have been directed by officials responsible for establishing NHCC's sexual harassment redress policies. *See Monell*, 436

U.S. at 694, 98 S.Ct. 2018; *Jeffes*, 208 F.3d at 56; *Wimmer*, 176 F.3d at 137. Newman, the Medical Center's chief executive officer, and Savinetti, its general counsel, fomented her transfer, and are arguably persons in policymaking positions who deal with those matters. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Jeffes*, 208 F.3d at 56; *Wimmer*, 176 F.3d at 137. If Newman and Savinetti are not officials responsible for establishing policy, discovery may bear out that their purported practice of immediately reassigning alleged sexual harassment victims may have been so "persistent and widespread" that policy makers may be said to have sanctioned those practices. *See Herrera*, 17 Fed. Appx. at 43; *Jeffes*, 208 F.3d at 61; *Sorlucco*, 971 F.2d at 870–71.

Secondly, Rosenblum, as chairman of the NHCC board of directors, is a person whose activities may well be said to reflect official NHCC policy, which may in turn make sexual harassment a NHCC custom or policy for § 1983's purposes. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Jeffes*, 208 F.3d at 56; *Wimmer*, 176 F.3d at 137. Alternatively, NHCC policymakers may have so failed to train Rosenblum about sexual harassment laws that NHCC policy makers were deliberately indifferent to the constitutional rights of their employees. *See DeCarlo*, 141 F.3d at 61–62; *Gottlieb*, 84 F.3d at 518; *Kern*, 93 F.3d at 44; *Ricciuti*, 941 F.2d at 123.

Accordingly, construing the facts and inferences in her favor, *see Wall*, 18 Fed. Appx. at 42, McGrath has pled that her First Amendment rights were violated because of a NHCC custom or policy. Therefore, NHCC's Motion to Dismiss McGrath's First Amendment claims must be denied.

### 2. Equal Protection Claim

■ NHCC next moves to dismiss McGrath's Equal Protection claim on grounds that McGrath has not pled a municipal custom or policy of denying Equal Protection rights to female employees. NHCC is mistaken.

Sexual harassment is actionable under § 1983 as a Fourteenth Amendment Equal Protection violation. *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996); *Annis v. County of Westchester*, 36 F.3d 251, 254 (1994); *Beattie v. Farnsworth Middle Sch.*, 143 F.Supp.2d 220, 231–32 (S.D.N.Y. 1998). "The elements of an equal protection sexual harassment claim are not coextensive with the elements of a Title VII sexual harassment claim." *Shanes–Hernandez v. Clementoni*, 1995 WL 749491, *1, 99 F.3d 402 (2d Cir.1995); *Beattie*, 143 F.Supp.2d at 232.

■ Proof of a Title VII sexual harassment claim is, however, sufficient to sustain an Equal Protection violation. *Shanes–Hernandez*, 1995 WL 749491, at *1, 99 F.3d 402; *Annis*, 36 F.3d at 254. Equal protection sexual harassment claims are similar to hostile work environment claims. *See Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143–44 (2d Cir.1993); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000).

McGrath has pled facts sufficient to sustain a Title VII hostile work environment claim. She has consequently pled facts sufficient to state an Equal Protection sexual harassment claim for § 1983's purposes. *See Shanes–Hernandez*, 1995 WL 749491, at *1, 99 F.3d 402; *Annis*, 36 F.3d at 254.

Hostile work environment claims lie when "the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.' " *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999) (quoting

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). To establish hostile work environment claims, plaintiffs must show: (1) objectively severe or pervasive conduct that creates an environment that reasonable persons would perceive as hostile or abusive; (2) a subjective belief that the environment is hostile or abusive; and (3) that the hostile or abusive conduct targets plaintiffs because of their membership in a protected class. *See Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001); *Brennan,* 192 F.3d at 318.

McGrath has pled facts that, if proven, show her workplace was " 'permeated with discriminatory intimidation, ridicule, and insult that ... [was] sufficiently pervasive to alter the conditions of ... [her] employment.' " *Brennan,* 192 F.3d at 318 (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367). She alleged that Rosenblum battered her, passed lewd remarks to her, wrote an obscene note to her, threatened her employment, and generally made her life difficult because of her supposed refusal to submit to his alleged advances. That conduct is objectively severe enough to be actionable and was subjectively extreme enough to elicit complaints from McGrath. *See Brown,* 257 F.3d at 252; *Brennan,* 192 F.3d at 318. Moreover, there is no doubt that Rosenblum's behavior was directed at McGrath because of her gender. *See Brown,* 257 F.3d at 252; *Brennan,* 192 F.3d at 318. Accordingly, McGrath may be able to sustain a Title VII hostile work environment claim against NHCC, and may therefore pursue an Equal Protection sexual harassment claim against it as well. *See Shanes–Hernandez,* 1995 WL 749491, at *1, 99 F.3d 402; *Annis,* 36 F.3d at 254.

However, McGrath still must show that her Equal Protection claim arose because of a municipal custom or policy. *Johnson v. New York,* 21 Fed.Appx. at 43; *Tenenb-*

*aum,* 193 F.3d at 597; *Dangler,* 193 F.3d at 142. Affording McGrath the deference she is due on a motion to dismiss, *see Wall,* 18 Fed.Appx. at 42, she may demonstrate a NHCC custom or policy by showing that Rosenblum's sexual harassment was so "persistent and widespread" that NHCC policymakers acquiesced to it. *See Herrera,* 17 Fed.Appx. at 43; *Jeffes,* 208 F.3d at 61; *Sorlucco,* 971 F.2d at 870–71. Alternatively, McGrath may be able to show that policy makers failed to train Rosenblum in a manner that amounted to deliberate indifference to the rights of others. *See DeCarlo,* 141 F.3d at 61–62; *Gottlieb,* 84 F.3d at 518; *Kern,* 93 F.3d at 44; *Ricciuti,* 941 F.2d at 123. Finally, McGrath may establish that Rosenblum's position as chairman of the NHCC board of directors rendered his activities a NHCC custom or policy. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Jeffes,* 208 F.3d at 56; *Wimmer,* 176 F.3d at 137.

Accordingly, McGrath has adequately stated an Equal Protection claim against NHCC. Its Motion to Dismiss McGrath's Equal Protection claim must therefore be denied.

**D. Marital Status Discrimination Claim**

NHCC next moves to dismiss McGrath's New York Executive Law marital status discrimination claim. NHCC's dismissal argument is unpersuasive.

New York Executive Law section 296 prohibits employers from discriminating against individuals because of their marital status. N.Y.EXEC.LAW § 296(1)(a) (Consol.2001). "[T]he statute in effect says that employers may no longer decide whether to hire, fire, or promote someone because he or she is single, married, divorced, separated or the like." *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Bd.,* 51 N.Y.2d 506, 434 N.Y.S.2d 961, 415 N.E.2d 950, 953

(1980). The statute only prohibits discrimination based on marital status and does not proscribe discrimination against the particular individual involved in the relationship. *See id.*

■ Construing the facts and inferences in the light most favorable to McGrath, *see Wall,* 18 Fed.Appx. at 42, Rosenblum discriminated against her because of her marital status as a single or engaged woman. *See Manhattan Pizza Hut, Inc.,* 434 N.Y.S.2d 961, 415 N.E.2d at 953. Rosenblum allegedly: (1) told McGrath she would be stupid to marry her present husband because he was using her; (2) refused to give her time off to plan her wedding or to get married; (3) told her that "she should be ... [sleeping with] him, and not going home to John [her husband;]" and (4) had a friend call McGrath repeatedly on her wedding weekend to dissuade her from getting married. (Am.Compl.¶¶ 32, 63, 66–67.)

Those allegations are sufficient, at this stage, to support a claim that Rosenblum discriminated against McGrath because of her marital status as a single or engaged woman. *See Manhattan Pizza Hut, Inc.,* 434 N.Y.S.2d 961, 415 N.E.2d at 953. Accordingly, NHCC's Motion to Dismiss McGrath's New York Executive Law claim must be denied.

## E. Intentional Tort Claims

### 1. Assault, Battery and *Respondeat Superior*

NHCC moves to dismiss McGrath's assault and battery claims on grounds that McGrath did not plead assault and battery against it. Alternatively, NHCC contends that it may not be held liable for assault or battery under *respondeat superior* even if McGrath did plead assault and battery against it. NHCC is mistaken in both respects.

McGrath has sufficiently alleged assault and battery against Rosenblum. Rosenblum's purportedly tortious conduct may be imputed to NHCC under *respondeat superior.* Accordingly, McGrath's assault and battery claims may not be dismissed.

### a. Assault and Battery

■ Assault is the "intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 108 (2d Cir.1993). Battery is "intentional wrongful physical contact with another person without consent." *Id.*

■ McGrath has pled that Rosenblum: (1) grabbed her buttocks while she was standing behind him; (2) grabbed her buttocks while forcibly placing her hand on his crotch; and (3) pinned her against a wall and grabbed her breasts. (Am.Compl.¶¶ 44, 62, 65.) McGrath alleged that she did not want Rosenblum to make that contact with her. (Am.Compl.¶¶ 45, 47, 85, 103.)

McGrath has accordingly alleged that Rosenblum caused intentional, offensive physical contact with her. *See United Nat'l Ins. Co.,* 994 F.2d at 108. That allegation is sufficient to sustain a battery claim. *See id.*

■ If the facts and inferences are construed in her favor, *see Wall,* 18 Fed. Appx. at 42, McGrath has also alleged that she saw some of that contact coming and that she was in imminent fear of it. *See United Nat'l Ins. Co.,* 994 F.2d at 108. That allegation is sufficient to sustain an assault claim. *See id.*

Therefore, McGrath has sufficiently pled assault and battery claims against Rosenblum. *See United Nat'l Ins. Co.,* 994 F.2d at 108. NHCC may be charged with that conduct under *respondeat superior.*

#### b. *Respondeat Superior*

Municipal employers may be held liable under *respondeat superior* for the intentional State law torts of their employees. *See Kirk v. Metro. Transp. Auth.*, No. 99 Civ. 3787, 2001 WL 258605, at *7 (S.D.N.Y. March 19, 2001); *Chimurenga v. City of New York*, 45 F.Supp.2d 337, 344 (S.D.N.Y.1999). New York State law imposes *respondeat superior* liability on employers for their employees' intentional torts if the tortfeasor was acting within the scope of his employment. *See Buck v. Zwelling*, 272 A.D.2d 895, 707 N.Y.S.2d 281, 282 (N.Y.App.Div.2000).

An employee's conduct is within the scope of his employment if the employer could have reasonably foreseen the employee's tortious conduct. *Helbig v. City of New York*, 212 A.D.2d 506, 622 N.Y.S.2d 316, 318 (N.Y.App.Div.1995). The " 'employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected.' " *Id.* (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 304, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (N.Y.1979)).

Construing the facts and inferences in the light most favorable to McGrath, *see Wall*, 18 Fed.Appx. at 42, it was foreseeable to NHCC that Rosenblum would sexually accost her. First, approximately once a week, Rosenblum allegedly grabbed McGrath's phone from her and threw the contents of her desk to the floor in plain view of several NHCC employees. (Am.Compl.¶¶ 34–35.) Second, Rosenblum purportedly stood in close physical proximity to McGrath in the presence of other NHCC employees and whispered sexual remarks to her. (Am.Compl.¶ 36.) Third, NHCC's director of labor relations allegedly heard Rosenblum sexually harass McGrath and warned McGrath to "watch herself." (Am.Compl.¶ 50.) Finally, McGrath supposedly complained to the Medical Center's director of diversity about Rosenblum's alleged sexual harassment. (Am.Compl.¶ 51.)

Those allegations, when viewed in the light most favorable to McGrath, *see Wall*, 18 Fed.Appx. at 42, demonstrate that NHCC was on notice that Rosenblum: (1) physically touched McGrath; and (2) sexually harassed her. Those facts establish that NHCC could reasonably have foreseen Rosenblum's tortious conduct, even if it could not have foreseen the precise manner in which Rosenblum would execute it. *See Helbig*, 622 N.Y.S.2d at 318.

Accordingly, Rosenblum's activities were within the scope of his employment. *See id.* NHCC may therefore be held liable for that behavior under *respondeat superior. See Buck*, 707 N.Y.S.2d at 282. NHCC's Motion to Dismiss McGrath's assault and battery claims must consequently be denied.

#### 2. Intentional Infliction of Emotional Distress

McGrath also alleges that Rosenblum's activities gave rise to a claim for intentional infliction of emotional distress ("IIED"). NHCC contends that Plaintiffs may not maintain an IIED claim where the conduct giving rise to that claim is encompassed by another tort and that dismissal of that claim is therefore proper. McGrath's IIED claim may not be dismissed.

To state IIED claims under New York law, plaintiffs must allege " '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.' " *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir.2001) (quoting *Stuto v. Fleishman*, 164

F.3d 820, 827 (2d Cir.1999)). The "standard for stating a valid [IIED] claim ... is 'rigorous, and difficult to satisfy.'" *Id.* (quoting *Howell v. New York Post Co.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (N.Y.1993)). Essentially, "[t]he conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Stuto,* 164 F.3d at 827).

■■■ New York courts do not allow IIED claims where " 'the conduct complained of falls well within the ambit of other traditional tort liability.'" *Lian v. Sedgwick James, Inc.,* 992 F.Supp. 644, 651 (S.D.N.Y.1998) (quoting *Levin v. McPhee,* 917 F.Supp. 230, 242 (S.D.N.Y. 1996)). IIED claims that are duplicative of other tort claims should therefore be dismissed. *See id.*

Construing the facts and inferences in the light most favorable to McGrath, *see Wall,* 18 Fed.Appx. at 42, Rosenblum's allegedly harassing conduct: (1) was extreme and outrageous, because it exceeded the bounds of any decent behavior; (2) was executed in reckless disregard of the substantial likelihood that it would cause McGrath severe emotional distress; and (3) caused McGrath's severe emotional distress. *See Conboy,* 241 F.3d 242, 258. No tort other than IIED sufficiently encompasses Rosenblum's conduct for Rule 12(b)(6)'s purposes. *See Lian,* 992 F.Supp. at 651. Accordingly, McGrath has stated an IIED claim against Rosenblum.

NHCC may be held accountable for that IIED claim under *respondeat superior. See Kirk,* 2001 WL 258605, at *7; *Chimurenga,* 45 F.Supp.2d at 344. First, as described earlier, Rosenblum was acting within the scope of his employment when he engaged in his seemingly outrageous conduct. *See Buck,* 707 N.Y.S.2d at 282.

Second, as previously noted, NHCC could have reasonably anticipated Rosenblum's behavior towards McGrath. *See Helbig,* 622 N.Y.S.2d at 318.

Therefore, at this point, NHCC may be charged with McGrath's IIED claim under *respondeat superior.* NHCC's Motion to Dismiss McGrath's IIED claim must accordingly be denied.

### F. John McGrath's Loss of Consortium Claim

NHCC lastly moves to dismiss John McGrath's loss of consortium claim on grounds that it is derivative to McGrath's withdrawn negligence claim. Plaintiffs concur that the loss of consortium claim is derivative, but maintain that it may be supported by McGrath's claims for assault, battery and IIED. Plaintiffs are correct.

■■■ Claims for loss of consortium are derivative claims. *See generally Saghezi v. Reno,* No. 94 Civ. 8291, 1996 WL 524338, at *3 (S.D.N.Y. Sept. 12, 1996). Assault and battery claims may sustain derivative loss of consortium claims. *See generally Dotson v. Broehel,* No. 91 Civ. 5039, 1993 WL 227600, at *5 (S.D.N.Y. June 18, 1993); *Ricca v. United States,* 488 F.Supp. 1317, 1326–28 (E.D.N.Y.1980).

McGrath has pled facts sufficient to support her assault and battery claims. Those claims are adequate to sustain John McGrath's loss of consortium claim on this motion. *See Dotson,* 1993 WL 227600, at *5; *Ricca,* 488 F.Supp. at 1326–28. Accordingly, NHCC's motion to dismiss John McGrath's derivative loss of consortium claim is denied.

### CONCLUSION

NHCC's Motion to Dismiss Plaintiffs' Amended Complaint is DENIED. NHCC is directed to answer that Amended Com-

plaint within twenty days of receiving this Memorandum and Order.

SO ORDERED.